No. 59,977

WENDY L. BLAKE, A Minor, by OSCAR M. BLAKE, YASUKO BLAKE, and JAMES E. BROCK, her conservators; and OSCAR M. BLAKE and YASUKO BLAKE, *Appellants*, v. PEPSI-COLA BOTTLING COMPANY OF LYONS, INC.; M. E. I. CORPORATION; PEPSICO, INC.; S. F. B. PLASTICS, INC.; ZAPATA CAP MANUFACTURING CO.; FOWLER PRODUCTS CO.; and ZALKIN MANUFACTURING CO., *Appellees*.

(740 P.2d 79)

Opinion filed July 17, 1987.

*Ken M. Peterson*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Jana J. Deines*, of the same firm, was with him on the briefs for appellants.

*Lee Turner*, of Turner and Boisseau, Chartered, of Great Bend, argued the cause, and *Casey. R. Law*, of the same firm, was on the brief for appellees Pepsi-Cola Bottling Company of Lyons, Inc., and M. E. I. Corporation.

*Jerry G. Elliott*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *William R. Sampson*, of Shook, Hardy & Bacon, of Overland Park, was with him on the brief for appellee PepsiCo, Inc.

*Kenneth E. Peirce*, of Reynolds, Peirce, Forker, Suter, O'Neal & Myers, of Hutchinson, was on the brief for appellee S. F. B. Plastics, Inc.

*Arthur S. Chalmers*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, was on the brief for appellee Zapata Cap Manufacturing Co.

*J. Thomas Marten*, of Bremyer & Wise, P.A., of McPherson, was on the brief for appellee Fowler Products Co.

The opinion of the court was delivered by

McFARLAND, J.: Wendy L. Blake, a minor, was injured when struck in the eye by the aluminum cap ejecting from a two-liter plastic Pepsi-Cola bottle she was attempting to open with pliers. This product liability action was brought on her behalf by her three co-conservators against various corporations involved in the chain of manufacture and distribution of the Pepsi-Cola

product. The exact relationship of each defendant to the product is not relevant to the issues before us and need not be set forth herein. Wendy's parents, Oscar M. Blake and Yasuko Blake, had individual claims for property damage to their home arising from the incident and thus appear in the caption as party plaintiffs as well as co-conservators. No issue in the appeal relates to their individual claims and, for purposes of this opinion, Wendy will be referred to as the sole plaintiff. Plaintiff Wendy L. Blake appeals from the district court's approval of a purported $14,000 settlement of all claims.

The facts bearing on the circumstances of the settlement must be set forth in considerable detail. Plaintiff was twelve years old on October 1, 1981. On that date, she was having difficulty removing the cap from the two-liter Pepsi-Cola bottle. She ultimately attempted to remove the cap through the use of pliers. The cap separated from the bottle with considerable force and struck plaintiff in her right eye. As a result of the accident, plaintiff was hospitalized for ten days and suffered permanent damage to her eye, including the inability to see out of the eye when looking straight ahead, frequent headaches, blurred vision, a cataract, and an increased risk of developing glaucoma.

Three co-conservators were appointed for Wendy. They were her parents (Oscar and Yasuko Blake) and a Sterling, Kansas, druggist who was a longtime family friend (James E. Brock). E. Dexter Galloway, a Hutchinson attorney, handled the appointment of the conservators and filed the instant action on Wendy's behalf on June 30, 1983. Discovery proceeded. The defense produced an expert who would testify that the threads on the cap had been stripped, which indicated the cap had been turned the wrong way—thereby permitting the cap to shoot off the bottle as a result of the carbonation in the beverage as opposed to the more gradual release of pressure accompanying the correct opening of such a bottle. Wendy admitted she could not recall which way she twisted the pliers in opening the bottle. Plaintiff did not have an expert on bottling industry practices, and her sole expert on liability was a McPherson metallurgist. Pretrial conference was set for October 26, 1984, with trial scheduled for November 26, 1984. At Galloway's request, the pretrial conference was rescheduled for October 29, 1984. The pretrial confer-

ence was converted to a discovery conference, at which Galloway advised the court that: (1) a Texas attorney named Richard Roth would be assisting him; (2) discovery could be completed by April 1985; and (3) he wished to employ an expert to examine the cap. The defendants objected to the addition of the expert witness and the district court refused to add the witness. A new discovery cutoff date of February 10, 1985, was set with trial to commence March 25, 1985. A pretrial conference for February 22, 1985, was set. Counsel were advised these were "firm" dates. Upon inquiry by the court, Galloway advised he had offered to accept $150,000 in settlement and defense counsel advised this was unacceptable and the case would likely proceed to trial.

On December 18, 1984, Galloway commenced the first of multiple efforts to extend and/or continue the three dates set at the October 29, 1984, conference, all such requests being refused by the district court.

On February 5, 1985, William Sampson, attorney for defendant PepsiCo, Inc., telephoned Galloway with a $14,000 settlement offer on behalf of all defendants. That evening Galloway met with Wendy's parents at their home. He advised them of the settlement offer. He also advised that he did not think it was fair. He then stated the problems of continuing the litigation, as he viewed them, including: (1) liability concerns relating to Wendy possibly having turned the cap contrary to the arrow on the cap; (2) plaintiff's lack of a good expert witness on bottle caps, and the court's refusal to add such a witness; and (3) the additional financial requirements. In this last regard, Galloway told the Blakes he could not advance any additional costs and that the Blakes would have to produce several thousand dollars in cash prior to trial. Galloway advised that his fee and advanced expenses would be $9,000 of the $14,000 settlement. Galloway further advised that if the settlement offer were to be accepted they should so advise him by 10:00 the following morning.

After Mr. Galloway left, the Blakes had a talk with Wendy about the settlement offer, as she had not been present during Galloway's meeting with her parents. Wendy did not believe the settlement was fair. The Blakes were very concerned over the prospect of having to generate several thousand dollars in additional costs if the case proceeded. They are a family of modest

means. Oscar Blake has been disabled since 1966, and his only income is from social security. Yasuko Blake's employment consists of cleaning a dormitory at Sterling College each morning and cleaning the office of a local business in the evening. Additionally, she makes custom draperies. Mrs. Blake, a native of Japan, is not very familiar with the American legal system. The Blakes had no way to raise the needed expense money except to mortgage their home, and they were afraid they might lose their home as a result thereof.

The following morning, Mr. Blake reluctantly telephoned Galloway and advised him that he and his wife would accept the $14,000 settlement offer if Wendy could get half of it. Galloway agreed to reduce his claim to 50% of the settlement. Galloway advised them the matter would have "to go before the Court" before it would be final and that he would draw up "some papers" for their signature.

The same morning that he talked to Mr. Blake, Galloway telephoned the PepsiCo attorney to advise him the settlement offer had been accepted. The same day the PepsiCo attorney telephoned the district judge to advise him of the settlement. The pretrial and trial dates were cancelled by the judge. A few days later a settlement hearing was set by the district judge for March 5, 1985, upon the telephone request of one of the defense counsel. On February 13, 1985, Galloway took an instrument entitled "Application to Approve Settlement" to the Blakes' home for their signatures. Mr. and Mrs. Blake signed the instrument but retained it in order to acquire the signature of James E. Brock, the third co-conservator. Mrs. Blake took the instrument to Brock, who signed it believing, he testified, that a trial had occurred. This was Brock's first involvement in the purported settlement. Brock felt the money was inadequate, but he believed there was nothing to be done about it. A few days later, Brock learned there might be other "options" and requested that his name be removed from the instrument, which was still in the Blakes' possession. Brock then conferred with his brother, Ralph Brock (a Wichita attorney in the firm subsequently retained to represent Wendy). James Brock then drew a line through his signature on the instrument and wrote "not approved" over his signature. The Blakes did the same thing as

to their signatures. This left only Galloway's signature intact. The instrument was never returned to Galloway or filed with the court. It is in this case only as an exhibit.

On or about February 19, 1985, Mr. Ken Peterson, of the law firm of Morris, Laing, Evans, Brock & Kennedy, Chartered, telephoned the district judge herein to advise he was now representing the plaintiff and requested cancellation of the scheduled settlement conference on the basis the proposed settlement was no longer in effect. The district judge advised him the settlement conference would proceed.

On February 21, 1985, plaintiff's new counsel entered their formal appearance herein. The following day they filed a Motion to Quash Hearing Regarding Proposed Settlement and Alternative Motion to Disapprove and Reject Proposed Settlement and a Motion to Dismiss without Prejudice. The various defendants filed motions to approve and enforce the settlement. All motions were taken up at the scheduled settlement hearing on March 5, 1985. In addition to testimony taken and exhibits offered, the parties requested the court consider all deposition testimony. At the settlement hearing, all three conservators testified that they disapproved of the settlement. Wendy Blake testified that the settlement was not fair and she had never approved of it. Additionally, Don Foss, a Great Bend, Kansas, lawyer with over 44 years' experience, testified that the settlement of $14,000 was "grossly inadequate."

The district court overruled plaintiff's motions to dismiss and to disapprove and reject the proposed settlement and sustained the defendants' motions to approve the settlement. The district court found that a valid, binding, and fair settlement had occurred and that the same should be approved. It is from these determinations that plaintiff appeals.

Numerous issues are raised, but we conclude the first issue is determinative of the appeal. That is whether the district court erred in considering and approving the proposed settlement under the circumstances herein.

Plaintiff argues that the proposed settlement was not properly before the court inasmuch as Galloway lacked authority to advise defense counsel the settlement offer had been accepted where he had never presented the offer to one of the three co-conser-

vators. This point has merit. That Galloway was aware there were three conservators is undeniable. He had been the attorney who prepared the pleadings setting up the conservatorship and had commenced the action herein which petition shows Brock as a conservator in the caption and alleges in its body that Brock is a duly appointed conservator for the plaintiff. Additionally, the instrument entitled "Application to Approve Settlement", subsequently prepared by Galloway, begins:

"COME NOW Oscar M. Blake, Yasuko Blake and James E. Brock, Conservators for Wendy L. Blake, a minor, by E. Dexter Galloway, their attorney, and apply to the Court for an Order approving settlement of the chose in action in favor of Wendy L. Blake for injuries sustained October 1, 1981."

Clearly, under the circumstances herein, there was not a valid acceptance of the settlement offer when Galloway communicated the purported acceptance to the PepsiCo attorney on February 6, 1985.

The defendants sought enforcement of the settlement as accepted by Galloway. Inasmuch as Galloway did not have authority from Brock to settle, Galloway lacked authority to communicate an acceptance of the offer of settlement. The fact that Brock later signed the application for approval of the settlement when the same was presented to him by a co-conservator, but withdrew his approval before the same had been returned to Galloway and/or filed with the court, is immaterial to the issue of whether there was an acceptance of the offer of settlement on February 6, 1985. We conclude there was no valid acceptance of the offer of settlement under the circumstances herein and it was error for the court to consider and approve the same.

Although other issues raised need not be determined by virtue of our decision on the first issue, some additional comments are in order. At the hearing, no application to approve the settlement by the plaintiff was on file with the court. At the hearing, all three conservators and the minor plaintiff expressed their strong disapproval of the offer on the basis of its inadequacy. Only plaintiff's former attorney and the defendants were in favor of court approval of the purported settlement. The district court, in effect, forced an unwanted settlement upon the plaintiff and her conservators. Such is clearly not the purpose of a hearing seeking

court approval of the settlement of a minor's personal injury litigation.

The judgment of the district court approving the purported settlement is reversed and the case is remanded for further proceedings.